UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS E. WARD, III; MELVIN E.
WATSON; and ROBERT MATHIS,

                              Plaintiffs,

            - against -

RICHARD SHADDOCK, in his individual an official
capacity; and THE NEW YORK STATE
DEPARTMENT OF TRANSPORTATION,

                              Defendants.

14-cv-7660 (KMK)

**Original Filed By ECF**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEW YORK STATE DEPARTMENT OF TRANSPORTATION'S MOTION TO DISMISS THE AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant the New York State Department of Transportation*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
Assistant Attorney General
    *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF ALLEGED FACTS.................................................................................. 2

A.  The Parties ............................................................................................................ 2
B.  The Alleged "Racially Hostile and Discriminatory Work Environment" ........................... 3
C.  Ward's May 6, 2013 Internal DOT Complaint of Discrimination...................................... 4
D.  The Alleged "Retaliations" by Shaddock ......................................................................... 5
E.  The SDHR and EEOC Proceedings ................................................................................ 6
F.  The Present Action .......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

POINT I    WARD HAS FAILED TO STATE A CLAIM OF DISCRIMINATION ................ 9

A.  Ward Does Not Allege an Adverse Employment Action ...................................................... 9
B.  Ward Does Not Allege the Requisite Discriminatory Intent ............................................. 12

POINT II    WARD FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM ....... 13

POINT III    WARD FAILS TO STATE A CLAIM OF RETALIATION ................................. 16

A.  Ward Does Not Plausibly Allege that He Suffered an Adverse Action ........................... 16
B.  Ward Also Does Not Plausibly Allege a Causal Connection Between Any Protected
     Activity and Any Adverse Action.................................................................................. 19

POINT IV    UNDER THE SUPREME COURT'S RECENT DECISION IN *VANCE* v.
             *BALL STATE UNIVERSITY*, DOT IS NOT LIABLE HERE IN ANY EVENT .... 22

A.  Shaddock Is Not Ward's "Supervisor" for Title VII Purposes ......................................... 22
B.  Ward Does Not Allege that DOT Was Negligent............................................................. 24

CONCLUSION.................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albert-Roberts* v. *GGG Constr., LLC*,
 542 F. App'x 62 (2d Cir. 2013) ..................................................................... 14-15

*Anand* v. *N.Y. State Dep't of Taxation & Fin.*,
 No. 10-CV-5142 (SJF) (WDW), 2013 U.S. Dist. LEXIS 104424 (E.D.N.Y. May 28,
 2013), *adopted by* 2013 U.S. Dist. LEXIS 104291 (E.D.N.Y. July 25, 2013). ......................17

*Antonmarchi* v. *Consol. Edison Co. of N.Y.*,
 No. 03 Civ. 7735 (LTS) (KNF), 2008 U.S. Dist. LEXIS 7548 (S.D.N.Y. Sept. 29,
 2008), *aff'd*, 514 F. App'x 33 (2d Cir.), *cert. denied*, 134 S. Ct. 790 (2013)..........................18

*Ashcroft* v. *Iqbal*,
 556 U.S. 662 (2009)..............................................................................................8, 11

*Avillan* v. *Donahoe*,
 483 F. App'x 637 (2d Cir. 2012) ............................................................... 10-11, 17

*Barrett* v. *Forest Labs., Inc.*,
 39 F. Supp. 3d 407 (S.D.N.Y. 2014)......................................................................13

*Bell Atl. Corp.* v. *Twombly*,
 550 U.S. 544 (2007)...........................................................................................8, 11

*Bethea* v. *City of New York*,
 No. 11-CV-2347 (SJ) (JMA), 2014 U.S. Dist. LEXIS 80945 (E.D.N.Y. June 12,
 2014) ..............................................................................................................22, 24

*Bowman* v. *Granny's Kitchen, LLC*,
 No. 14-cv-00585, 2015 U.S. Dist. LEXIS 15689 (N.D.N.Y. Feb. 10, 2015)....................12, 13

*Burlington Indus., Inc.* v. *Ellerth*,
 524 U.S. 742 (1998)..............................................................................................23

*Burlington N. & Santa Fe Ry. Co.* v. *White*,
 548 U.S. 53 (2006)........................................................................................ 16-19

*Carter* v. *Verizon*,
 No. 13 Civ. 7579 (KPF), 2015 U.S. Dist. LEXIS 6370 (S.D.N.Y. Jan. 20, 2015)...... 17, 21-22

*Chung* v. *City Univ. of N.Y.*,
 605 F. App'x 20 (2d Cir. 2015) ............................................................9-10, 16, 19

*Chung* v. *City Univ. of N.Y.*,
No. 12 Civ. 4045 (GBD) (RLE), 2014 U.S. Dist. LEXIS 124601 (S.D.N.Y. Aug. 27, 2014), *aff'd*, 605 F. App'x 20 (2d Cir. 2015) ........................................................................19

*Cruz* v. *N.Y. State Dep't of Corrs. & Cmty. Supervision*,
No. 13 Civ. 1335 (AJN), 2014 U.S. Dist. LEXIS 77428 (S.D.N.Y. June 4, 2014)................17

*Faragher* v. *City of Boca Raton*,
524 U.S. 775 (1998).........................................................................................................14

*Figueroa* v. *N.Y.C. Health & Hosps. Corp.*,
No. 03-CV-9589 (NRB), 2007 U.S. Dist. LEXIS 58342 (S.D.N.Y. Aug. 7, 2007)................12

*Galimore* v. *City Univ. of N.Y. Bronx Cmty. Coll.*,
641 F. Supp. 2d 269 (S.D.N.Y. 2009)...............................................................................19

*Green* v. *City of Mt. Vernon*,
No. 10-CV-707 (KMK), 2015 U.S. Dist. LEXIS 42533 (S.D.N.Y. Mar. 31, 2015) ................2

*Haggood* v. *Rubin & Rothman, LLC*,
No. 14-cv-341 (SJF) (AKT), 2014 U.S. Dist. LEXIS 161674 (E.D.N.Y. Nov. 17, 2014) ............................................................................................................................14, 24

*Harris* v. *Forklift Systems, Inc.*,
510 U.S. 17 (1993)...................................................................................................... 13-15

*Henry* v. *N.Y.C. Health & Hosp. Corp.*,
18 F. Supp. 3d 396 (S.D.N.Y. 2014)....................................................................10-13, 19-20

*Hicks* v. *Baines*,
593 F.3d 159 (2d Cir. 2010)..............................................................................................16

*Hill* v. *Rayboy-Brauestein*,
467 F. Supp. 2d 336 (S.D.N.Y. 2006)............................................................................11, 16

*Hollingsworth* v. *Perry*,
133 S. Ct. 2652 (2013) ....................................................................................................13

*Hubbard* v. *Port Auth. of N.Y. & N.J.*,
No. 05 Civ. 4396 (PAC), 2008 U.S. Dist. LEXIS 12316 (S.D.N.Y. Feb. 20, 2008)...............11

*Hussey* v. *N.Y. State Dep't of Law*,
933 F. Supp. 2d 399 (E.D.N.Y. 2013) ...............................................................................13

*Johnson* v. *Morrison & Foerster LLP*,
No. 14-CV-428 (JMF), 2015 U.S. Dist. LEXIS 24008 (S.D.N.Y. Feb. 26, 2015).................12

*Johnson* v. *TCB Constr. Co.*,
    334 F. App'x 666 (5th Cir. 2009) (per curiam) ....................................................15

*Kalyanaram* v. *Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*,
    742 F.3d 42 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1377 (2014) ..............................................2

*Kamrowski* v. *Morrison Mgmt. Specialist*,
    No. 05-CV-9234 (KMK), 2010 U.S. Dist. LEXIS 103290 (S.D.N.Y. Sept. 29, 2010)..........21

*Littlejohn* v. *City of N.Y.*,
    --- F.3d ----, 2015 U.S. App. LEXIS 13475 (2d Cir. Aug. 3, 2015) ................................ 8-9, 16

*Mikisic* v. *TD Ameritrade Holding Corp.*,
    No. 12 Civ. 4446 (AJN), 2013 U.S. Dist. LEXIS 63254 (S.D.N.Y. Mar. 7, 2013).................11

*Murphy* v. *Suffolk Cnty. Cmty. Coll.*,
    No. 10-CV-0251 (LDW) (AKT), 2011 U.S. Dist. LEXIS 136983 (S.D.N.Y. Nov. 29, 2011) ...............................................................................................................................11

*Musaji* v. *Banco do Brazil*,
    No. 10 Civ. 8541 (RJH), 2011 U.S. Dist. LEXIS 68161 (S.D.N.Y. June 21, 2011) ................6

*Ndremizara* v. *Swiss Re Am. Holding Corp.*,
    No. 12-CV-5769 (KMK), 2015 U.S. Dist. LEXIS 34493 (S.D.N.Y. Mar, 18, 2015)................................................................................................................ 8, 10-11

*Patane* v. *Clark*,
    508 F.3d 106 (2d Cir. 2007)..............................................................................................12

*Rivera* v. *Rochester Genesee Regional Transp. Auth.*,
    743 F.3d 11 (2d Cir. 2014)...........................................................................................14, 18

*Rodas* v. *Town of Farmington*,
    567 F. App'x 24 (2d Cir. 2014) .......................................................................................18

*Sanders* v. *N.Y.C. Human Res. Admin.*,
    361 F.3d 749 (2d Cir. 2004).......................................................................................9-10, 12

*Singletary* v. *Mo. Dep't of Corr.*,
    423 F.3d 886 (8th Cir. 2005) ...........................................................................................15

*Slattery* v. *Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001)..........................................................................................20-21

*Stewart* v. *U.S. Postal Serv.*,
    No. 10-CV-00103 (SWW), 2011 U.S. Dist. LEXIS 8174 (E.D. Ark. Jan. 26, 2011) .............15

*Tavares* v. *Sam's Club*,
178 F. Supp. 2d 96 (D. Conn. 2001)........................................................................15

*Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*,
133 S. Ct. 2517 (2013)...........................................................................................19

*Vance* v. *Ball State University*,
133 S. Ct. 2434 (2013)................................................................................ 1, 22-24

*Wang* v. *Palmisano*,
51 F. Supp. 3d 521 (S.D.N.Y. 2014).....................................................................20

*Winston* v. *City of New York*,
No. 12-CV-395 (FB), 2013 U.S. Dist. LEXIS 120280 (S.D.N.Y. Aug. 23, 2013) ), *on reconsideration*, 2014 U.S. Dist. LEXIS 89605 (E.D.N.Y. July 1, 2014)..............20

*Wright* v. *City of Syracuse*,
No. 10-CV-0661, 2014 U.S. Dist. LEXIS 44524 (N.D.N.Y. Mar. 31, 2014), *aff'd*, --- F. App'x ----, 2015 U.S. App. LEXIS 6169 (2d Cir. 2015)....................................18

*Zerfas* v. *Burwell*,
No. PWG-14-2806, 2015 U.S. Dist. LEXIS 83057 (D. Md. June 26, 2015).................... 23-24

## STATUTES

42 U.S.C.
§ 1983.......................................................................................................................7
§ 1985.......................................................................................................................7

Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e *et seq.* ("Title VII") ..................................................................... *passim*

Defendant the New York State Department of Transportation ("DOT"), by its attorney, Eric T. Schneiderman, Attorney General of the State of New York, respectfully submits this memorandum of law in support of its motion, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss, as against DOT, the Amended Verified Complaint in this action (the "Amended Complaint"), dated March 13, 2015, and each and every cause of action and request for relief asserted therein, in their entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiff Thomas E. Ward, III ("Ward"), an African-American DOT employee who works at the DOT facility in Monticello, New York, brings claims in this action against DOT under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging that he has been unlawfully discriminated against and harassed on the basis of his race and unlawfully retaliated against for complaining of this alleged discrimination and harassment.

Ward's claims against DOT are without merit, and should be dismissed as a matter of law, for several reasons:

*First*, Ward has failed to state a plausible claim of race-based employment discrimination. *See infra* Point I.

*Second*, Ward has failed to state a claim of a racially hostile work environment under Title VII. *See infra* Point II.

*Third*, Ward also has failed to state a plausible Title VII retaliation claim. *See infra* Point III.

*Finally*, under the Supreme Court's recent decision in *Vance* v. *Ball State University*, 133 S. Ct. 2434 (2013), DOT is not liable here in any event. *See infra* Point IV.

For all these reasons, discussed in detail below, DOT's motion should be granted, and the Amended Complaint should be dismissed as against DOT with prejudice.

## STATEMENT OF ALLEGED FACTS

This statement is based on the allegations in the original Complaint and the Amended Complaint ("Cplt." and "Am. Cplt.," copies of which are attached as Exhibits A and B, respectively, to the accompanying Declaration of William J. Taylor, Jr. ("Taylor Decl.")), which are taken as true only for purposes of this motion, as well as other documents, noted below, that the Court may properly consider on this motion to dismiss.[1]

A.      **The Parties**

Plaintiffs Ward, Melvin E. Watson ("Watson"), and Robert Mathis ("Mathis") (collectively, "Plaintiffs") are African-American DOT employees who work at the DOT facility in Monticello, New York.  (Am. Cplt. ¶¶ 1-3.)  Ward has worked for DOT since September 7, 1999, and he currently serves as a Highway Maintenance Supervisor I at the DOT facility in Monticello, a position he has held at all times relevant to this action.  (*Id.* ¶ 1.)  Watson has worked for DOT since March 22, 1988, and he currently serves as a Highway Maintenance Worker II at the DOT facility in Monticello, a position he has held at all times relevant to this action.  (*Id.* ¶ 2.)  Mathis has worked for DOT since September 15, 2003, and he currently serves as a Highway Maintenance Worker I at the DOT facility in Monticello, a position he has held at all times relevant to this action.  (*Id.* ¶ 3.)

---

[1] *See, e.g.*, *Green* v. *City of Mt. Vernon*, No. 10-CV-707 (KMK), 2015 U.S. Dist. LEXIS 42533, at *24 (S.D.N.Y. Mar. 31, 2015) ("In ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference, as well as matters of which judicial notice may be taken, and documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit.") (quoting *Kalyanaram* v. *Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1377 (2014)) (internal quotation marks omitted) (brackets and omissions in *Green*).

Defendant DOT is an agency of the State of New York.  (*Id.* ¶ 4.)  Defendant Richard Shaddock ("Shaddock") is a DOT employee.  (*Id.* ¶ 5.)  From approximately 2006 to on or about October 23, 2014, Shaddock served as a Highway Maintenance Supervisor II at the DOT facility in Monticello, New York.  (*Id.* ¶¶ 5-6, 11.)  In that position, Shaddock was responsible for "day-to-day work assignments and allocation of equipment" at the Monticello facility, and, according to the allegations in the Amended Complaint, he also "pre-screened" all applicants for employment at the Monticello facility.[2]  (*Id.* ¶¶ 5, 18.)  Since on or about October 23, 2014, Shaddock no longer works at DOT's Monticello facility and instead works at the DOT facility located in Kenoza Lake, New York.  (*Id.* ¶ 6.)

**B.    The Alleged "Racially Hostile and Discriminatory Work Environment"**

In an effort to support their claim that DOT's Monticello facility constituted a "racially hostile and discriminatory work environment," Plaintiffs allege in the Amended Complaint that, during Shaddock's tenure as a Highway Maintenance Supervisor II at Monticello between 2006 and 2014, "he regularly expressed contempt for African-Americans generally and the African-American workers under his supervision including, but not limited to, Ward, Watson, and Mathis, describing them as, among things, dirt chickens, coons, n-----s, lazy, stupid and unqualified because of their race."  (*Id.* ¶ 15.)  Plaintiffs also allege, without further factual explication, that Shaddock "regularly made racially charged jokes about the African-American workers under his command in the presence of an exclusively white audience," and that he "permitted, condoned and acquiesced in racially discriminatory conduct committed by Caucasian subordinates which included racially defamatory language, racially demeaning use of caricatures

---

[2] Notably, even under the allegations in the Amended Complaint, Shaddock did not "pre-screen[]" the job applications of any of the Plaintiffs, each of whom was hired by DOT years before Shaddock took the position as Highway Maintenance Supervisor II at Monticello.  (*See id.* ¶¶ 1-3, 5.)

and cartoons and a general disrespect and animus for African-Americans including but not limited to Ward, Watson and Mathis." (*Id.* ¶ 16.) Plaintiffs further allege, again without any additional factual specifics, that Shaddock "permitted, condoned and acquiesced in acts of vandalism against Ward's office, desk and business records with the design and purpose of disrespecting and showing contempt for Ward as a mid-level African-American supervisor and to otherwise diminish and undermine Ward's authority to supervis[e] his Caucasian subordinates." (*Id.* ¶ 17.) And, finally, Plaintiffs allege that, between 2011 and 2014, four of the five African-American DOT employees working at the Monticello facility, including the three of them, were assigned "to the less desirable evening shift." (*Id.* ¶ 22.)[3]

**C.**   **Ward's May 6, 2013 Internal DOT Complaint of Discrimination**

On or about May 6, 2013, Ward filed an internal complaint with DOT's Diversity Management Bureau claiming discrimination based on race, color, and retaliation. (*Id.* ¶ 25; Taylor Decl. Ex. C (Ward's Internal DOT Complaint of Discrimination).)[4] After a thorough investigation, DOT found no evidence to support the allegations regarding racial discrimination and harassment in the workplace. (Taylor Decl. Ex. D (SDHR Determination and Order After Investigation) at 2; *id.* Ex. E (Jan. 7, 2014 Letter from Beth A. O'Connor, Associate Attorney at

---

[3] Plaintiffs also make allegations in the Amended Complaint that, during Shaddock's tenure as a Highway Supervisor II at DOT's Monticello facility, he "pre-screened" applications for employment at the Monticello facility "in a racially discriminatory manner." (*Id.* ¶ 18; *see id.* ¶¶ 18-21.) These allegations, however, do not relate to any of the Plaintiffs. As noted, *see supra* note 2, each of the Plaintiffs was hired years before Shaddock became a Highway Supervisor II at Monticello. (*Id.* ¶¶ 1-3, 5.) And, it should also be noted, that, under Plaintiffs' own allegations, over 20% (5 out of 24) of the full-time employees at DOT's Monticello facility (where Shaddock allegedly "pre-screened . . . in a racially discriminatory manner") "are/were" African-American. (*Id.* ¶ 18.)

[4] Watson and Mathis did not file their own internal DOT discrimination complaints, but they assert that their "complaints of racial discrimination" were "specifically addressed" and "incorporated in the complaint[] made by Ward." (Am. Cplt. ¶¶ 26, 28.) Contrary to these assertions, however, Watson and Mathis are not mentioned at all in Ward's internal discrimination complaint. (Taylor Decl. Ex. C.)

DOT, to Ward).)  DOT, however, did find "substantial proof of violation of the Department's 'Promoting a Positive and Productive Workplace Policy.'"  (*Id.* Ex. E; *id.* Ex. D at 2; Am. Cplt. ¶ 11.)  As a result, disciplinary action was taken by DOT against Shaddock.  (Taylor Decl. Ex. D at 2; Am. Cplt. ¶¶ 6, 11; *see* Taylor Decl. Ex. E.)

**D.    The Alleged "Retaliations" by Shaddock**

Plaintiffs allege that "following Ward's complaints with the DOT" or "on or after May 6, 2013" (*i.e.*, the date Ward submitted his internal DOT discrimination complaint), they sustained various alleged "retaliations" by Shaddock and/or other unidentified individuals.  (Am. Cplt. ¶¶ 29-42.)  They baldly assert, without further factual support or explication, that "Ward's office, equipment and personal desk was vandalized and tampered with and his personal and business records destroyed"; that "Shaddock refused to directly communicate or acknowledge Ward, Watson and Mathis and intentionally promoted a racially hostile environment"; that "[P]laintiffs' work performance received a heightened degree of scrutiny and criticism from Shaddock"; that "Shaddock filed false reports and allegations about or concerning Ward, Watson and Mathis' work performance"; and that "Shaddock intentionally deprived Ward of necessary safety equipment to perform daily tasks."  (*Id.* ¶¶ 29, 37-40.)  Plaintiffs also allege that, "on or after May 6, 2013," Shaddock reassigned them "to the oldest equipment in DOT's fleet"; directed them "to perform menial tasks such as collecting litter and dead animal carcasses at a much greater frequency"; and "substantially reduced the number of men under Ward's supervision." (*Id.* ¶¶ 33-36, 41.)

In an effort to support their assertions of alleged retaliatory acts by Shaddock, Plaintiffs also attach three charts to the Amended Complaint that purport to compare the trucks assigned to Ward, his daily work assignments, and the number of men he supervised "between the months of

March 1, 2012 – November 28, 2012 and March 25, 2013 – November 28, 2013." (*Id.* ¶¶ 33, 36, 41 & Exs. B-D.)  Rather confusingly, the eight-month period in 2013 allegedly reflected in these charts begins six weeks before Ward even filed his internal DOT discrimination complaint and extends until seven months afterwards.  (*Id.*)  Other than the repeated allegation that the acts occurred "on or after May 6, 2013," Plaintiffs, however, provide no further or more specific allegations as to when during this period these asserted "retaliations" by Shaddock took place. (*See id.* ¶¶ 33-36, 41 & Exs. B-D.)[5]

E.    **The SDHR and EEOC Proceedings**

On November 12, 2013, Ward filed a verified complaint with the New York State Division of Human Rights (the "SDHR"), which was dual-filed with the U.S. Equal Employment Opportunity Commission (the "EEOC"), alleging that DOT and Shaddock had discriminated against him on the basis of his race, color, and sex and had retaliated against him for filing an internal complaint of discrimination.  (Taylor Decl. Ex. F (SDHR Complaint).)[6]  On May 7, 2014, after investigating the charges, the SDHR dismissed the complaint, determining that there was no probable cause to believe that DOT or Shaddock has engaged or is engaging in unlawful discrimination or retaliation against Plaintiff.  (Taylor Decl. Ex. D.)  On June 25, 2014, the EEOC issued its own Dismissal and Notice of Rights with respect to Plaintiff's discrimination charge, adopting the findings of the SDHR.  (Am. Cplt. ¶ 12; *id.* Ex. A (EEOC Dismissal and

---

[5] And, even more puzzlingly, Plaintiffs, at least at one point in the Amended Complaint, appear to directly equate the time period "on or after May 6, 2013" with the quite different period purportedly reflected in the charts, "between . . . March 25, 2013 and November 28, 2013." (*Id.* ¶ 36.)

[6] *See, e.g.*, *Musaji* v. *Banco do Brazil*, No. 10 Civ. 8541 (RJH), 2011 U.S. Dist. LEXIS 68161, at *13 n.4 (S.D.N.Y. June 21, 2011) (noting that "with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents [on a motion to dismiss] because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims" (internal quotation marks omitted)).

Notice of Rights).)

F.    **The Present Action**

On September 22, 2014, Ward commenced the present action in this Court, by filing the original Complaint against DOT and Shaddock, alleging claims of racial discrimination and retaliation under the Equal Protection Clause of the Fourteenth Amendment; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1983; and 42 U.S.C. § 1985.  (Taylor Decl. Ex. A (Dkt. No. 1).)  Thereafter, by stipulation of the parties, which was so ordered by the Court on February 4, 2015, all claims alleged by Ward in this action against Shaddock as well as all of Ward's non-Title VII claims against DOT (*i.e.*, his claims against DOT pursuant to the Fourteenth Amendment, § 1983, and § 1985) were dismissed with prejudice.  (Taylor Decl. Ex. H (Dkt. No. 23).)

Then, on or about March 13, 2015, Ward and two new plaintiffs, Watson and Mathis, filed the Amended Complaint, again raising claims for race-based employment discrimination against both DOT and Shaddock.  (Taylor Decl. Ex. B (Dkt. Nos. 25, 28.)  Specifically, Ward alleges the same Title VII cause of action he alleged against DOT in the original Complaint. (Am. Cplt. ¶ 7.)  And Watson and Mathis have alleged claims, against DOT and Shaddock, only "under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. 1983 & 1985."  (*Id.* ¶ 8.)

As directed by the Court in its July 9, 2015 Motion Scheduling Order (Docket No. 43), the parties have stipulated to the dismissal with prejudice of all of the claims alleged by Watson and Mathis against DOT as well as all of their claims against Shaddock in his official capacity. (Taylor Declaration Ex. I (Dkt. No. 45).)  This stipulation was so ordered by the Court on September 1, 2015.  (*Id.*)  Thus, the only claims that remain in this action are (i) Ward's Title VII

cause of action against DOT, which appears to raise claims of both a racially hostile work environment and retaliation; and (ii) Watson's and Mathis's § 1983 and § 1985 claims against Shaddock in his individual capacity.

DOT now moves to dismiss Ward's Title VII claims, which are the only claims remaining against it, with prejudice for the reasons discussed below.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), including in Title VII cases, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *see Littlejohn* v. *City of N.Y.*, --- F.3d ----, 2015 U.S. App. LEXIS 13475, at *23 (2d Cir. Aug. 3, 2015) (holding that "*Iqbal*'s requirement applies to Title VII complaints of employment discrimination"). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'" *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

As this Court has made clear, "if a plaintiff has not nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Ndremizara* v. *Swiss Re Am. Holding Corp.*, No. 12-CV-5769 (KMK), 2015 U.S. Dist. LEXIS 34493, at *16 (S.D.N.Y. Mar. 18, 2015) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted) (alterations in *Ndremizara*); *see Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'").

Under these governing standards, Ward has failed to plead sufficient facts to plausibly state any Title VII claim against DOT.

## POINT I
## WARD HAS FAILED TO STATE A CLAIM OF DISCRIMINATION

It is not clear whether Ward is attempting, in the Amended Complaint, to raise a separate claim of race-based employment discrimination against DOT (as opposed to only the hostile work environment and retaliation claims he does assert, which are discussed below, *see infra* Points II-IV). To the extent he is, however, such a claim fails as a matter of law. The Amended Complaint is simply devoid of facts plausibly alleging that Ward "suffered an adverse employment action" or that any adverse employment action "was motivated by discriminatory intent." *Littlejohn*, 2015 U.S. App. LEXIS 13475, at *25 (holding that, on a Title VII discrimination claim, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff," *inter alia*, "suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent"). Dismissal here is thus fully warranted.

### A.    Ward Does Not Allege an Adverse Employment Action

"For purposes of a Title VII discrimination claim by a person already employed," the Second Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of employment." *Chung* v. *City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (quoting *Sanders* v. *N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)) (internal quotation marks omitted). Such a change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders*, 361 F.3d at 755 (internal quotation marks and citation omitted). And, as the Second Circuit has explained, "[e]xamples include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a

less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Chung*, 605 F. App'x at 22 (quoting *Sanders*, 361 F.3d at 755) (alteration in original).

The purported adverse actions pointed to in the Amended Complaint do not come close to meeting this standard. As noted, *see supra* pp. 4-5, Ward alleges that (i) his "office, equipment and personal desk was vandalized and tampered with and his personal and business records destroyed"; (ii) Shaddock "refused to directly communicate or acknowledge" him; (iii) his work performance "received a heightened degree of scrutiny and criticism from Shaddock"; (iv) Shaddock "filed false reports and allegations about or concerning" him; (v) Shaddock "deprived [him] of necessary safety equipment"; (vi) Shaddock reassigned him "to perform menial tasks" with "the oldest equipment in DOT's fleet"; (vii) Shaddock "substantially reduced the number of men under [his] supervision"; and (viii) between 2011 and 2014, he was assigned to the "less desirable evening shift." (Am. Cplt. ¶¶ 22, 29, 33-41.) None of these allegations rises to the level of an adverse employment action.

As an initial matter, most, if not all, of Ward's allegations of adverse actions consist of vague and conclusory assertions that are plainly insufficient to sustain a discrimination claim. (*Id.* ¶¶ 29, 37-41); *see, e.g.*, *Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 405-07 (S.D.N.Y. 2014) (rejecting plaintiffs' vague and conclusory allegations of adverse employment actions in dismissing Title VII discrimination claim); *Ndremizara*, 2015 U.S. Dist. LEXIS 34493, at *35 (noting, in dismissing employment discrimination claim, that "conclusory assertions, 'without supporting factual allegations, . . . are not entitled to a presumption of truth'"). And, even if properly alleged, each would still fall well short of what is required to constitute an adverse employment action under Title VII. *See, e.g.*, *Avillan* v. *Donahoe*, 483 F.

App'x 637, 638 (2d Cir. 2012) ("having personal items removed from a locker" does not constitute adverse action); *Mikisic* v. *TD Ameritrade Holding Corp.*, No. 12 Civ. 4446 (AJN), 2013 U.S. Dist. LEXIS 63254, at *11 (S.D.N.Y. Mar. 7, 2013) ("ostracism and isolation at work is not enough to constitute an adverse employment action"); *Hubbard* v. *Port Auth. of N.Y. & N.J.*, No. 05 Civ. 4396 (PAC), 2008 U.S. Dist. LEXIS 12316, at *37 (S.D.N.Y. Feb. 20, 2008) ("reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation" (internal quotation marks omitted)); *Henry*, 18 F. Supp. 3d at 407 ("the alleged manufacturing of charges against [plaintiff]" is not enough to constitute an adverse employment action); *Murphy* v. *Suffolk Cnty. Cmty. Coll.*, No. 10-CV-0251 (LDW) (AKT), 2011 U.S. Dist. LEXIS 136983, at *19-20 (S.D.N.Y. Nov. 29, 2011) ("the denial of . . . safety equipment" is, by itself, likely insufficient to constitute an adverse employment action); *Hill* v. *Rayboy-Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) ("change in job responsibilities" and "underutilization of Plaintiff's skills" not adverse employment actions unless "accompanied by material adverse changes in employment, such as demotion or loss of wages").

Only Ward's allegations that he was assigned to "the less desirable evening shift" and was directed to perform "menial tasks" and to do so with "old equipment" include, at best, even a modicum of the "factual enhancement," *Ndremizara*, 2015 U.S. Dist. LEXIS 34493, at *35, mandated by *Iqbal* and *Twombly*. (Am. Cplt. ¶¶ 33-36 & Exs. B-C.) But whether that is enough to warrant "a presumption of truth," *Ndremizara*, 2015 U.S. Dist. LEXIS 34493, at *35, for those allegations at this stage of the proceeding (which DOT does not concede) makes no difference here. The law in this Circuit is clear that this sort of "receipt of undesirable assignments, without more, amounts to nothing more than a 'mere inconvenience,' not a 'materially adverse change in

the terms and conditions of employment.'"  *Henry*, 18 F. Supp. 3d at 406 (quoting *Sanders*, 361

F.3d at 755); *see, e.g.*, *Johnson* v. *Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 U.S.

Dist. LEXIS 24008, at *13 (S.D.N.Y. Feb. 26, 2015) ("dissatisfaction with the work assigned (or

not assigned)" is not adverse employment action); *Figueroa* v. *N.Y.C. Health & Hosps. Corp.*,

No. 03-CV-9589 (NRB), 2007 U.S. Dist. LEXIS 58342, at *12 (S.D.N.Y. Aug. 7, 2007) ("being

assigned undesirable work duties and unfavorable work schedules" is not adverse employment

action).  It provides no basis for any Title VII discrimination claim.

### B.    Ward Does Not Allege the Requisite Discriminatory Intent

Even if Ward had adequately alleged that he was subject to an adverse employment

action by DOT (which he has not), he fails to plausibly allege that any such action was taken

against him on the basis of his race.  *See Patane* v. *Clark*, 508 F.3d 106, 112 (2d Cir. 2007)

("The *sine qua non*" of any employment discrimination claim "is that the discrimination must be

*because of*" the employee's protected characteristic (internal quotation marks omitted) (emphasis

in original)).  While the alleged racial slurs set forth in the Amended Complaint are odious and

offensive, as are the assertions of other "racially defamatory language" and "racially charged . . .

references" at the Monticello facility, their alleged use by Shaddock and other unnamed

"Caucasian subordinates" (*see* Am. Cplt. ¶¶ 15-16) is not enough to state a race-based claim for

disparate treatment under Title VII.  *See, e.g.*, *Henry*, 18 F. Supp. 3d at 409-10; *Bowman* v.

*Granny's Kitchen, LLC*, No. 14-cv-00585 (MAD/ATB), 2015 U.S. Dist. LEXIS 15689, at *8

(N.D.N.Y. Feb. 10, 2015).

Ward does not, as he must to survive dismissal, "plausibly link[]" the alleged "racially

discriminatory comments" to an adverse employment action.  *Henry*, 18 F. Supp. 3d at 409.

Nowhere in the Amended Complaint does Ward "clearly specify the length of time between

the[se] comments" and any of the purported adverse employment actions pointed to in his pleading. *Id.* Instead, all the Amended Complaint states is that the alleged racial slurs and other racially charged comments were "regularly" made at some unspecified times between 2006 to 2014 (*see* Am. Cplt. ¶¶ 15-16); *see also infra* note 8, while the alleged adverse actions occurred "on or after May 6, 2013" or, with respect to the alleged evening shift assignments, "[f]rom approximately 2011 through 2014" (*see id.* ¶¶ 22, 29-42). That does not suffice. *Henry*, 18 F. Supp. 3d at 409; *see Bowman*, 2015 U.S. Dist. LEXIS 15689, at \*8 ("Although discriminatory comments directed at Plaintiff and his racial group are a recognized method of establishing discriminatory intent, he fails to allege facts tying the racial comment to his termination.") Thus, for this reason, too, any discrimination claim asserted here by Ward should be dismissed pursuant to Rule 12(b)(6).[7]

## POINT II
## WARD FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM

Ward also has not alleged facts sufficient to state a Title VII claim for a hostile work environment.

Among other elements, a Title VII racially hostile work environment claim must allege facts showing that the allegedly offensive conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Harris*

---

[7] To the extent Ward is also attempting to raise a pattern-or-practice discrimination claim (*see* Am. Cplt. ¶¶ 15-24), that, too, is plainly without merit. *See, e.g.*, *Barrett* v. *Forest Labs., Inc.*, 39 F. Supp. 3d 407, 427 n.6 (S.D.N.Y. 2014) ("The 'pattern-or-practice method of proof is not available to nonclass, private plaintiffs.'"). Nor does this attempted reliance on purported statistical evidence by Ward do anything to make his disparate treatment claim against DOT a plausible one, as there is no allegation that Shaddock pre-screened Ward, who was hired years before Shaddock took the position as Highway Maintenance Supervisor II at Monticello. *See, e.g.*, *Hussey* v. *N.Y. State Dep't of Law*, 933 F. Supp. 2d 399, 408-09 (E.D.N.Y. 2013); *see also supra* note 2. Ward also plainly lacks standing to challenge this alleged "pre-screening" process, which has never been applied to him. *See, e.g.*, *Hollingsworth* v. *Perry*, 133 S. Ct. 2652, 2662 (2013).

v. *Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993), which requires the work environment to be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 787 (1998). And while, as noted, the alleged racial slurs and other "racially defamatory language" set forth in the Amended Complaint (*see* Am. Cplt. ¶¶ 15-16) are offensive and their use is unacceptable, to establish a claim of a racially hostile work environment under Title VII, "the plaintiff must show more than a few isolated incidents of racial enmity." *Haggood* v. *Rubin & Rothman, LLC*, No. 14-cv-341 (SJF) (AKT), 2014 U.S. Dist. LEXIS 161674, at *47 (E.D.N.Y. Nov. 17, 2014) (citing cases and granting 12(b)(6) dismissal despite four uses of "n word" by co-workers over a thirty-three-month period, including directly towards plaintiff).

Here, Ward asserts that Shaddock and other unidentified "Caucasian subordinates" at DOT's Monticello facility used the slurs, jokes, and racially demeaning language at issue an unspecified amount of times over an eight-year period.[8] (Am. Cplt. ¶¶15-16.) But he does not allege that this was "coupled with threats of physical violence." *Albert-Roberts* v. *GGG Constr., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013); *see Rivera* v. *Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) ("The use of racially offensive language is particularly likely to create a hostile work environment when, as here, it is presented in a 'physically threatening' manner."). Nor does Ward allege that, over this eight-year period, he ever heard or complained about the alleged slurs, so it could not have affected his work environment, as the law requires. (Am. Cplt. ¶ 16 (alleging that Shaddock "made racially charged jokes and

---

[8] Ward does vaguely assert that "Shaddock regularly made racially charged jokes and references" and "regularly expressed contempt for African-Americans," but he does not allege that the racial slurs themselves were made regularly. (Am. Cplt. ¶¶ 15-16.)

references . . . in the presence of an exclusively white audience")); *see, e.g.*, *Harris*, 510 U.S. at 21-22 (holding that "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation").

   In short, while unquestionably deplorable, the alleged use of racial slurs and other "racially charged . . . references" on an unspecified number of occasions, particularly when not heard by the plaintiff employee, does not make out a hostile work environment claim under Title VII. *See, e.g.*, *Albert-Roberts*, 542 F. App'x at 63 (affirming grant of summary judgment to employer where plaintiff alleged single use by co-worker of "n word" to plaintiff's husband, and other actions); *Tavares* v. *Sam's Club*, 178 F. Supp. 2d 96, 102 (D. Conn. 2001) (dismissing hostile work environment claim as a matter of law where supervisor said "[t]hose stupid n-----s get on my nerves" and he "wanted to get those n-----s" outside of plaintiff's hearing  but which were reported to her).[9]  Accordingly, Ward's hostile work environment claim against DOT in this action should be dismissed with prejudice.  *See also infra* Part IV (noting that this claim should also be dismissed because DOT is not liable to Ward for any alleged harassment by Shaddock).

---

[9] *See also, e.g.*, *Stewart* v. *U.S. Postal Serv.*, No. 10-CV-00103 (SWW), 2011 U.S. Dist. LEXIS 8174, *7-8 (E.D. Ark. Jan. 26, 2011) (dismissing as a matter of law hostile work environment claim by black plaintiff who did not allege she heard Postmaster's directive to white employee to prohibit "those n-----s" from coming into the post office without ID badges and comment that "black people lie and steal" because "[w]ithout evidence that Stewart was aware of events that allegedly contributed to a hostile work environment, she is unable to show that she subjectively perceived that her environment  was hostile"); *Johnson* v. *TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (per curiam) (affirming dismissal of hostile work environment claim as a matter of law where, despite evidence of "[supervisor's] frequent use of the term 'n----r,'" these comments were not uttered in Johnson's presence nor is there evidence that they affected his job," though the same supervisor called plaintiff directly by same slur on an isolated occasion); *Singletary* v. *Mo. Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005) (supervisor's and co-worker's use on several occasions of "n word" insufficient to create hostile work environment when the comments were not made directly to black plaintiff).

## POINT III

## WARD FAILS TO STATE A CLAIM OF RETALIATION

The Amended Complaint also fails to state a claim against DOT for retaliation.  To state

such a claim under Title VII, Ward must plausibly allege "(1) participation in a protected

activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action;

and (4) a causal connection between the protected activity and the adverse employment action."

*Littlejohn*, 2015 U.S. App. LEXIS 13475, at \*37 (quoting *Hicks* v. *Baines*, 593 F.3d 159, 164 (2d

Cir. 2010)) (internal quotation marks omitted).  Ward does not satisfy the third or fourth

requirements here.  His Title VII retaliation claim should thus be dismissed with prejudice.

### A.    Ward Does Not Plausibly Allege that He Suffered an Adverse Action

To adequately plead that an adverse action occurred in the context of retaliation, a

plaintiff must plausibly allege "that a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry.*

*Co.* v. *White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  While this standard is

"broader . . . than in the discrimination context," *Chung*, 605 F. App'x at 23 n.1, as this Court

has noted, it "does not mean that all potential workplace grievances are fodder for retaliation

claims."  *Hill*, 467 F. Supp. 2d at 363; *see Burlington N.*, 548 U.S. at 68 (noting that "Title VII . .

. does not set forth a general civility code for the American workplace" (internal quotation marks

omitted)).  "[P]etty slights or minor annoyances that often take place at work and that all

employees experience" do not constitute actionable retaliation.  *Burlington N.*, 548 U.S. at 68.

Rather, as the Supreme Court has made clear, Title VII's "antiretaliation provision protects an

individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67.

The purported adverse employment actions set forth in the Amended Complaint (*see* Am. Cplt. ¶¶ 22, 29, 33-41) -- the very same purported adverse actions discussed above with respect to the discrimination claim, *see supra* Point I.A -- cannot meet this standard. For this reason alone, Ward's retaliation claim against DOT should be dismissed as a matter of law.

Once again, just as with his discrimination claim, the bulk of Ward's alleged adverse actions are supported only by vague and conclusory assertions that do not satisfy even the most basic pleading requirements. (*Id.* ¶¶ 29, 37-41); *see, e.g.*, *Cruz* v. *N.Y. State Dep't of Corrs. & Cmty. Supervision*, No. 13 Civ. 1335 (AJN), 2014 U.S. Dist. LEXIS 77428, at *16-18 (S.D.N.Y. June 4, 2014) (dismissing retaliation claim for failure to plausibly allege "specific retaliatory conduct that is objectively 'likely to dissuade employees from complaining or assisting in complaints about discrimination'"); *Carter* v. *Verizon*, No. 13 Civ. 7579 (KPF), 2015 U.S. Dist. LEXIS 6370, at *41 (S.D.N.Y. Jan. 20, 2015) (noting that "generalized" and "non-specific" allegations of adverse actions cannot support a retaliation claim). And the acts alleged do not constitute adverse employment actions for retaliation purposes in any event. *See, e.g.*, *Avillan*, 483 F. App'x at 638 ("having personal items removed from a locker" is not adverse employment action for purposes of retaliation claim); *Cruz*, 2014 U.S. Dist. LEXIS 77428, at *17-18 ("shunning" is not adverse action for retaliation purposes); *Anand* v. *N.Y. State Dep't of Taxation & Fin.*, No. 10-CV-5142 (SJF) (WDW), 2013 U.S. Dist. LEXIS 104424, at *14 (E.D.N.Y. May 28, 2013) ("courts have found that 'reprimands, threats of disciplinary action and excessive scrutiny' do not constitute adverse actions in a Title VII retaliation context"), *adopted by* 2013 U.S. Dist. LEXIS 104291, at *6-7 (E.D.N.Y. July 25, 2013).

As noted, *see supra* p. 11, only Ward's allegations that he was reassigned to perform "menial tasks, " was given "old equipment,"  and was assigned to "the less desirable evening shift" contain any semblance of factual specificity.  (Am. Cplt. ¶¶ 22, 33-36 & Exs. B-C.)  But, as with the discrimination claim, that does not matter.  Even under the broader standard that is applicable here, *see Burlington N.*, 548 U.S. at 67, these assertions do not plausibly allege the requisite adverse employment action needed to sustain Ward's Title VII claim of retaliation. *See, e.g.*, *Rodas* v. *Town of Farmington*, 567 F. App'x 24, 27 (2d Cir. 2014) (holding that "purportedly degrading work assignments . . . within [plaintiff's] job description," even when viewed in the aggregate with other identified actions, did not constitute the sort of adverse employment action needed for a viable retaliation claim); *Rivera*, 743 F.3d at 25-26 (holding that plaintiff's "assignment to drive particularly 'dirty buses,'" even in combination with disciplinary citations and one late overtime payment, did not rise to the level of a materially adverse action for retaliation claim); *Antonmarchi* v. *Consol. Edison Co. of N.Y.*, No. 03 Civ. 7735 (LTS) (KNF), 2008 U.S. Dist. LEXIS 7548, at *45 (S.D.N.Y. Sept. 29, 2008) (holding that "Plaintiff being forced to work on the night shift cannot constitute an adverse employment action" for purposes of a Title VII retaliation claim), *aff'd*, 514 F. App'x 33 (2d Cir.), *cert. denied*, 134 S. Ct. 790 (2013); *Wright* v. *City of Syracuse*, No. 10-CV-0661 (GTS/TWD), 2014 U.S. Dist. LEXIS 44524, at *70-71 (N.D.N.Y. Mar. 31, 2014) (holding that plaintiff's "receipt of undesirable work assignments" was not an adverse employment action for discrimination or retaliation purposes), *aff'd*, --- F. App'x ----, 2015 U.S. App. LEXIS 6169 (2d Cir. 2015).

In short, what Ward points to in the Amended Complaint are not materially adverse actions that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination," but instead are, at best, the sort of "petty slights or minor annoyances" that,

under settled law, are not actionable -- and thus compel dismissal here. *Burlington N.*, 548 U.S. at 68.[10]

### B.    Ward Also Does Not Plausibly Allege a Causal Connection Between Any Protected Activity and Any Adverse Action.

As the Supreme Court has recently held, "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 133 S. Ct. 2517, 2533 (2013). At the pleading stage, that causation may be inferred from plausible allegations of "close temporal proximity" between the alleged protected activity (here, Ward's May 6, 2013 internal discrimination complaint) and the alleged adverse action. *Chung*, 605 F. App'x at 23; *see, e.g.*, *Henry*, 18 F. Supp. 3d at 411-13. But "[w]hile the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together." *Henry*, 18 F. Supp. 3d at 412 (quoting *Galimore* v. *City Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009)) (internal citations omitted). Ward's allegations in the Amended Complaint do not meet these requirements.

With respect to nearly all of the alleged adverse actions -- *i.e.*, that Ward's "office, equipment and personal desk was vandalized and tampered with and his personal and business records destroyed" (Am. Cplt. ¶ 29); that Shaddock "refused to directly communicate or acknowledge" Ward and "intentionally promoted a racially hostile environment" (*id.* ¶ 37); that

---

[10] Notably, none of the alleged adverse actions actually dissuaded Ward from making his discrimination claims here, as he still went on to file his SDHR and EEOC complaint and this lawsuit, alleging claims of a racially hostile work environment and racial discrimination. *See, e.g.*, *Chung* v. *City Univ. of N.Y.*, No. 12 Civ. 4045 (GBD) (RLE), 2014 U.S. Dist. LEXIS 124601, at *12 n.6 (S.D.N.Y. Aug. 27, 2014), *aff'd*, 605 F. App'x 20 (2d Cir. 2015).

Ward's work performance "received a heightened degree of scrutiny and criticism from Shaddock" (*id.* ¶ 38); that Shaddock "filed false reports and allegations about or concerning" Ward (*id.* ¶ 39); and that Shaddock "intentionally deprived Ward of necessary safety equipment" (*id.* ¶ 40) -- the analysis here is simple.  Ward asserts that each of these actions occurred "following [his] complaints with the DOT" or "on or after May 6, 2013" (the date he submitted his internal DOT discrimination complaint).  (*Id.* ¶¶ 29, 37-40.)  But nothing more.  As courts have made clear, "[s]uch conclusory allegations are simply 'too vague in nature and non-specific as to time . . . to serve as a basis for [a plaintiff's] retaliation claims."  *Henry*, 18 F. Supp. 3d at 412 (dismissing retaliation claim where plaintiff alleged only that defendants retaliated against her "*when* she complained" and "*after* she complained"); *see, e.g.*, *Wang* v. *Palmisano*, 51 F. Supp. 3d 521, 541 (S.D.N.Y. 2014) (dismissing retaliation claim where plaintiff provided date of protected activity, but then "merely allege[d] that [d]efendants rejected his job applications 'after'" that date); *Winston* v. *City of New York*, No. 12-CV-395 (FB) (VBBD), 2013 U.S. Dist. LEXIS 120280, at *10-11 (S.D.N.Y. Aug. 23, 2013) (dismissing retaliation claim where complaint alleged only that plaintiff was terminated "shortly after" she engaged in protected activity), *on reconsideration*, 2014 U.S. Dist. LEXIS 89605 (E.D.N.Y. July 1, 2014).  Accordingly, Ward's retaliation claims based on any of these purported adverse actions should plainly be dismissed on causation grounds.

Ward's allegation that, starting in 2011, he was assigned to "the less desirable evening shift" (Am. Cplt. ¶ 22) also easily fails on causation grounds.  Under settled precedent, alleged adverse action that began before the protected activity cannot be retaliation for that activity.  *See, e.g.*, *Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (holding that a

plaintiff cannot raise an inference of retaliation based on timing where the alleged retaliation began prior to the protected activity).

The remaining adverse actions alleged in the Amended Complaint (*see* Am. Cplt. ¶¶ 33-36, 41 & Exs. B-D) fare no better. As to these alleged actions, Ward repeats the same vague, and wholly insufficient, allegations that each occurred "on or after May 6, 2013" (*id.* ¶¶ 35-36, 41) or "following May 6, 2013" (*id.* ¶ 34). He adds only that his reassignment to "menial tasks" and "the oldest equipment in DOT's fleet" and the "substantial[] reduc[tion]" in the number of workers "under [his] supervision" occurred "between the time period of March 25, 2013 and November 28, 2013." (*Id.* ¶ 36; *see id.* ¶¶ 33, 41 & Exs. B-D.). But these additional allegations do not help Ward's cause.

To the extent any of these alleged adverse actions occurred or began in the six weeks between March 25, 2013 and May 6, 2013 (*i.e.*, before Ward filed his internal discrimination complaint with DOT), they, of course, can provide no basis for Ward's retaliation claim. *See, e.g.*, *Slattery*, 248 F.3d at 95. And, even if all the alleged adverse actions took place between May 6, 2013 and November 28, 2013, that cannot save these retaliation claims from dismissal.

Most of that nearly seven-month period is too far removed from the alleged protected activity to plausibly allege the requisite causation. *See, e.g.*, *Kamrowski* v. *Morrison Mgmt. Specialist*, No. 05-CV-9234 (KMK), 2010 U.S. Dist. LEXIS 103290, at *70 (S.D.N.Y. Sept. 29, 2010) ("District courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." (internal quotation marks and citation omitted)). And, notably, Ward has nowhere specified when during this period the adverse actions allegedly occurred. Such "vague and non-specific" allegations simply do not state a viable retaliation claim. *Carter*,

2015 U.S. Dist. LEXIS 6370, at *43-44 (dismissing retaliation claim where, based on plaintiff's "vague and non-specific" allegations, it was unclear whether adverse actions occurred close enough in time to protected activity to give rise to any plausible causal inference).  Accordingly, dismissal of this claim, in its entirety, is fully warranted.

**POINT IV**

**UNDER THE SUPREME COURT'S RECENT DECISION IN *VANCE* v.
*BALL STATE UNIVERSITY*, DOT IS NOT LIABLE HERE IN ANY EVENT**

Even if Ward had plausibly alleged claims of retaliation or a hostile work environment here based on the conduct and actions of Shaddock (which he has not, *see supra* Points II-III), DOT would still not be liable.  Under the Supreme Court's recent decision in *Vance* v. *Ball State University*, 133 S. Ct. 2434 (2013), Shaddock is not Ward's "supervisor" for Title VII purposes, but merely a co-worker.  Thus, to state Title VII retaliation and hostile work environment claims against DOT, Ward must plausibly allege that DOT "was negligent in controlling working conditions."  *Id.* at 2439; *see Bethea* v. *City of New York*, No. 11-CV-2347 (SJ) (JMA), 2014 U.S. Dist. LEXIS 80945, at *19 (E.D.N.Y. June 12, 2014) (noting that where, as here, an plaintiff's Title VII harassment and retaliation claims are based on co-worker action, the employer is not liable unless "it has negligently allowed harassment or retaliation to occur or persist").  He has failed to do so.

**A.**    **Shaddock Is Not Ward's "Supervisor" for Title VII Purposes**

In *Vance*, the Supreme Court held that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim."  *Vance*, 133 S. Ct. at 2454.  That means that, to qualify as a Title VII "supervisor," an employee must have the ability "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant

22

different responsibilities, or a decision causing a significant change in benefits.'"  *Id.* at 2443

(quoting *Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742, 761 (1998)).  Otherwise, the employee

is "merely a co-worker," *id.* at 2443, and the employer is liable only if it was itself negligent.  *Id.*

at 2439, 2442-44, 2453.

     In the Amended Complaint, Ward does not allege that Shaddock had the power to (or

did) hire him, had the power to fire him, or in any other way had "the authority to effect a

tangible change in [his] terms and conditions of employment."  *Id.* at 2448; *see id.* at 2443.

Instead, what Ward alleges is that Shaddock, at least for eight months of the year, "was

responsible for . . . day-to-day work assignments and allocation of equipment" for Ward and

other employees at DOT's Monticello facility.  (Am. Cplt. ¶¶ 5, 31-32.)  Under *Vance*, that is

plainly not enough to make Shaddock Ward's Title VII "supervisor."  *Vance*, 133 S. Ct. at 2443,

2449-52 (rejecting definition of "supervisor" previously followed by the Second Circuit and

"advocated by the EEOC's Enforcement Guidance, which ties supervisor status to the ability to

exercise significant direction over another's daily work").

     To be sure, Ward also alleges that, between 2006 and 2014, Shaddock "pre-screened"

applications for employment at DOT's Monticello facility.  (Am. Cplt. ¶¶ 5, 18-19.)  But that

does nothing to change the proper result.  Even if such "pre-screening" could make Shaddock a

"supervisor" with respect to new hires or job applicants (which DOT would dispute, *see Vance*,

133 S. Ct. at 2452), it certainly would not make him *Ward's* supervisor, which is the only

relevant question here.  *See Vance*, 133 S. Ct. at 2439 (employee is a supervisor if empowered

"to take tangible employment actions *against the victim*" (emphasis added)); *see also, e.g.*,

*Zerfas* v. *Burwell*, No. PWG-14-2806, 2015 U.S. Dist. LEXIS 83057, at *28-30 & n.5 (D. Md.

June 26, 2015) (noting that even if employee "played a key role in hiring summer students and

other individuals, that shows only that he may have been the supervisor of those other individuals and is not relevant to his status with respect to [plaintiff]" (internal citation omitted)).

As noted, *see supra* pp. 2-3 & n.2, by the time any alleged "pre-screening" by Shaddock began in 2006, Ward had long been a DOT employee.  (Am. Cplt. ¶¶ 1, 5.)  Thus, whatever authority, if any, "pre-screening" provided Shaddock "to inflict direct economic injury" over others, it provided him with no such authority over Ward.  *Vance*, 133 S. Ct. at 2448.  And, accordingly, it provides no basis for Shaddock to be considered Ward's Title VII "supervisor."

### B.    Ward Does Not Allege that DOT Was Negligent

Because he is not his "supervisor," Shaddock is merely Ward's co-worker for Title VII purposes.  *See id.* at 2443.  Thus, to impute any liability here to DOT for Shaddock's conduct and actions, Ward must plausibly allege that DOT "was negligent with respect to the offensive behavior."  *Id.* at 2441; *see, e.g.*, *Bethea*, 2014 U.S. Dist. LEXIS 80945, at *19 (retaliation claim).  He has not even attempted to do so.

The Amended Complaint contains no allegations whatsoever that DOT "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed."  *Vance*, 133 S. Ct. at 2453.  To the contrary, Ward alleges that, after he filed his internal DOT discrimination complaint, Shaddock was disciplined and has been relieved from his position as a Highway Maintenance Supervisor II at the DOT facility in Monticello.  (Am. Cplt. ¶¶ 6, 11, 25; *see* Taylor Decl. Exs. D, E.)  Accordingly, for this reason as well, Ward's Title VII claims against DOT should be dismissed as a matter of law.  *See, e.g.*, *Haggood*, 2014 U.S. Dist. LEXIS 161674, at *52-56 (granting employer's motion to dismiss hostile work environment claim on this basis).

## CONCLUSION

For the foregoing reasons, DOT's motion should be granted and the Amended Complaint should be dismissed against it with prejudice.

Dated: New York, New York
       September 4, 2015

                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York
                                        *Attorney for Defendant*

                                        By:

                                        /s/ *William J. Taylor, Jr.*
                                        William J. Taylor, Jr.
                                        Assistant Attorney General
                                        120 Broadway, 24th Floor
                                        New York, New York 10271
                                        (212) 416-8426
                                        william.taylor@ag.ny.gov